# Supreme Court Decisions.

## SCOPE OF DEFENSE AVAILABLE UNDER AN ACCIDENT INSURANCE POLICY WHERE DEATH ENSUES FROM DISEASE.

THE AETNA LIFE INSURANCE CO. OF HARTFORD, CONNECTICUT, v. DORNEY, AN INFANT, BY TURLEY, HIS GUARDIAN.

Decided, March 31, 1903.

*Accident Insurance Policy—Exempts from Liability if Death Ensues from Disease—Such Defense not Limited by Sections 3625 and 3626, Revised Statutes—Instructions to Jury—Section 5201, Revised Statutes—Court May Ask for Special Findings in a General Verdict.*

1. Under favor of Section 5201, Revised Statutes, counsel may request the court to instruct the jury if they return a general verdict to find specially upon particular questions of fact stated in writing, but it is not error to refuse a request to instruct the jury to return a special verdict answering such questions.
2. If a policy of insurance against accident contains a stipulation that the insurer shall not be liable on account of the death of the assured if it results wholly or partly from infirmity or disease, the stipulation is available as a defense notwithstanding Sections 3625 and 3626, Revised Statutes, whose effect is limited to defenses founded on fraud or misstatement in the application.

Error to the Circuit Court of Hancock County.

The defendant in error, as beneficiary, brought suit in the court of common pleas against the company upon a policy of insurance against accident to recover on account of the death of George S. Dorney, alleged to have resulted from accident. The cause and manner are thus alleged in the petition:

"On said twenty-third day of October, 1899, at about eleven o'clock in the forenoon, said George S. Dorney, with the aid of a servant, was clearing away some rubbish on grounds adjoining said brick and tile factory, and which had been used in connection with said business, and in so doing it became necessary to remove a certain stone a short distance, said stone weighing about 150 pounds, and thinking it heavier than his said servant should lift and remove alone, he took hold of one side with his servant on the other side and together they lifted and undertook to carry it a short distance required, but in so doing, without any negligence, want of care or overexertion and wholly by accident beyond foresight, expectation and as an unusual effect, and thereby as a direct result caused and produced a rupture and hole through the stomach of said George S. Dorney, said rupture being about three-fourths of an inch in diameter, causing the contents of his stomach to escape into the abdomen, and thereby caused immediate and intense suffering, and his death within thirty-six hours thereafter. Immediately after said accident the excessive agony and extreme pain marked visibly upon the body the deadly injury received by said accident and so remained afterwards until his decease.

"Plaintiff says that a *post mortem* examination made known the facts that at some period during the life of said George S. Dorney —probably several years before his decease—what is generally known as a round ulcer, had made a hole through the stomach of said George S. Dorney of about three-fourths of an inch in diameter at its base, making a hole through the walls of the stomach of about three-eights of an inch in diameter. This opening nature had kindly patched by growing a fold of the *omentum* or covering of the bowels over the opening and so closing it like a patch. Said condition is not very uncommon and the cure so complete as to leave no injurious consequences or knowledge of weakness or danger.

"But in the case of said George S. Dorney it was at the *post mortem* ascertained that the patch by this accident was torn off this opening and thereby the result above stated followed."

For its defense the company relied upon the stipulations of the policy restricting its liabilities to injuries resulting from accidents, and particularly upon the folowing limitation expressed in the policy.

"This insurance does not cover disappearance; nor suicide; nor the result of injuries, fatal or otherwise, inflicted intentionally by the insured, or intentionally by any other person (except assaults committed for the sole purpose of burglary or robbery); nor the

result, fatal or otherwise, of injuries of which there is no visible
mark upon the body (the body itself in case of death not being
taken as such mark) ; nor the result, fatal or otherwise, of volun-
tary or involuntary taking of poison, contact with poisonous sub-
stances, inhaling of any gas or vapor, or of sunstroke, or freezing.
This insurance does not cover in event of accident or death, loss
of limb or sight, or disability resulting wholly or partly, directly
or indirectly, from bodily or mental infirmity, or disease in any
form proximate or contributory, as a primary, secondary or final
cause of accident, injury, disability or death."

To bring the case within those stipulations of the policy, its
answer contained the following allegations :

"It says said policy was issued by defendant and accepted by
said George S. Dorney upon the express conditions, and which con-
ditions are inserted in said policy as a part thereof, that said insur-
ance should not cover the result, fatal or otherwise, of injuries
of which there is no visible mark upon the body, the body itself
in case of death not being taken as such mark.   And further, that
said insurance should not cover in event of accident or death, loss
of limb or sight or disability resulting wholly or partly, directly
or indirectly, from bodily or mental infirmity, or disease in any
form, proximate or contributory, as a primary, secondary or final
cause of accident, injury, disability or death; nor did said insur-
ance cover injuries resulting from excessive labor or overexertion.

"It says the death of said George S. Dorney did not result
solely from bodily injuries effected through external, violent and
accidental means, but it says for a long period of time next preced-
ing his death said decedent had suffered from an affection and
disease known as ulcer of the stomach.   That shortly prior to his
death said disease of the stomach had so far advanced that thereby
and by reason of the same a hole about three-eighths of an inch in
diameter was made through the walls of the stomach allowing the
escape of the contents of the stomach into the abdominal cavity,
producing what is known as peritonitis, thereby causing said suffer-
ing and death of said George S. Dorney.   It says there was no visi-
ble mark of any injury or injuries whatever upon the body of said
decedent, George S. Dorney."

The evidence introduced upon the trial showed the circumstances
of the death of the assured to have been substantially as alleged
in the petition.   It also showed that a *post mortem* examination
was made by and in the presence of a number of physicians whose
testimony tended to show, if indeed it did not conclusively estab-
lish, that for two or three years before his death the assured had

been afflicted with ulcer of the stomach which had resulted in the complete perforation of that organ; that while nature had thrown a thin patch over the perforation the organ never became normally strong, and that the perforation was present as a contributing, even as the primary, cause of death.

Before the argument the court refused numerous instructions which the defendant requested, among them the following:

"Fourth. · If you find from the facts and circumstances proved that the coats of the stomach of said George S. Dorney had been eaten through by an ulcer and was left in a weakened and diseased condition, and that but for such diseased and weakened condition of his stomach the injury which caused his death would not have resulted from anything he did on the twenty-third of October, 1899, then and in that case the plaintiff can not recover and your verdict must be for the defendant."

The record further shows that: "The defendant requested the court to instruct the jury to return a special verdict, answering the following questions, to-wit:

"First Question. On the twenty-third of October, 1899, before said Dorney took hold of the stone referred to in the pleadings, was his stomach in a sound or unsound condition? Answer.

"Second Question. On the twenty-third of October, 1899, before said Dorney took hold of the stone referred to in the pleadings, was his stomach in a diseased or unsound condition? Answer.

"Third Question. If you answer that his stomach was diseased, then answer whether by reason of the disease his stomach was in a weakened condition? Answer.

"Fourth Question. If you answer that his stomach was in a weakened condition on that morning, then would anything he did on that day have caused the injury if it had not been for such weakened and diseased condition?" * * *

The court refused to instruct the jury to answer these questions of fact, or any of them, and to all of these refusals the defendant excepted. A verdict was returned in favor of the plaintiff; the defendant's motion for a new trial was overruled, and a judgment was entered upon the verdict. In the circuit court the judgment was affirmed.

*John Poe* and *Merle Newton Poe,* for plaintiff in error, cited and commented upon the following authorities:

*Ford* v. *Osborne,* 45 Ohio St., 1; *Shahan* v. *Swan,* 48 Ohio St., 25; *Feder* v. *Traveling Men's Assn.,* 70 Am. St. Rep., 212; *Barry* v. *Accident Assn.,* 23 Fed. Rep., 712; *Paul* v. *Travelers' Ins. Co.,* 8 Am. St. Rep., 758; *Menneiley* v. *Assurance Corporation,* 51 Am. St. Rep., 716; *Southard* v. *Assurance Co.,* 34 Conn., 574; *Bacon* v. *United States Assn.,* 123 N. Y., 304; *Sinclair* v. *Insurance Co.,* 3 Ell. & Ell., 478; *Railroad Co.* v. *McCamey,* 5 Circ. Dec., 631; 12 C. C. R., 543; *Railway Co.* v. *Village of St. Bernard,* 10 Circ. Dec., 415; 19 C. C. R., 299; *Monroeville* v. *Root,* 54 Ohio St., 523; *Gottschalk* v. *Witter,* 25 Ohio St., 76; *Davis* v. *Guarnieri,* 45 Ohio St., 470.

*Blackford & Blackford,* for defendants in error, cited and commented upon the following authorities:

*Walrath* v. *Insurance Co.,* 9 Circ. Dec., 233; 16 C. C. R., 426; *Travelers' Ins. Co.* v. *Myers,* 62 Ohio St., 529; *Miner* v. *Insurance Co.,* 3 Dec., 289; Wood on Ins., 141; *West* v. *Insurance Co.,* 27 Ohio St., 1; *Healey* v. *Mutual Accident Assn.,* 25 N. E. Rep., 52; *Paul* v. *Insurance Co.,* 20 N. E. Rep., 347; Med., 587; *McGlinchey* v. *Fidelity & Casualty Co.,* 80 Me., 251; *Insurance Co.* v. *Crandal,* 120 U. S., 527; *Freeman* v. *Mercantile Accident Assn.,* 30 N. E. Rep., 1013; *Carnes* v. *Traveling Men's Assn.,* 106 Ia., 281; *Pennington* v. *Insurance Co.,* 52 N. W. Rep., 482; *Hall* v. *Masonic Assn.,* 57 N. W. Rep., 366; *Insurance Co.* v. *Burroughs,* 69 Pa. St., 43, *Travelers Insurance Co.* v. *Dunlap,* 160 Ill., 642; *Metropolitan Acc. Assn.* v. *Froiland,* 161 Ill., 30; *Wehle* v. *United States Assn.,* 60 Am. St. Rep., 600; *American Accident Co.* v. *Reigart,* 94 Ky., 547 (42 Am. St. Rep., 374); *Gilson* v. *Canal Co.,* 36 Am. St. Rep., 860; *Paul* v. *Travelers' Ins. Co.,* 112 N. Y., 472; *United States Assn.* v. *Barry,* 131 U. S., 100; *Martin* v. *Insurance Co.,* 1 Fos. & Fur., 505; *Accident Assn.* v. *Hubbell,* 56 Ohio St., 516; *Railroad Co.* v. *Marsh,* 9 Circ. Dec., 584; 17 C. C. R., 13.

SHAUCK, J.; BURKET, C. J., SPEAR, DAVIS, PRICE and CREW, JJ., concur.

The case does not require us to place an estimate on the learning which the briefs exhibit with respect to the lexigraphic meaning of the word accident, nor need we determine the effect of the stipulation of the policy from which it is claimed that rules of evidence

had been prescribed for determining whether death resulted from accident. The stipulation by which the company is exempted from liability "in the event of death resulting wholly of partly, directly or indirectly, from infirmity or disease in any form, procuring or contributing, as a primary, secondary or final cause of death" is definitive of the obligation which the company assumed in consideration of the premium paid. It distinguishes the liability assumed from the larger liability which is incident to general insurance. By excluding a portion of the liability of a general insurer, it takes account of considerations which would materially and legitimately weigh in determining the amount of the premium. Being a contractual limitation upon the liability assumed, it is not obnoxious to criticism as an attempt to limit the evidence by which the beneficiary may establish the facts which bring his case within the liability fixed by the terms of the contract.

It is in vain that the defendant in error invokes the provisions of Sections 3625 and 3626, Revised Statutes, as against these stipulations of the policy. Those sections, under the conditions therein prescribed, prevent defenses upon the ground of fraudulent applications, but they do not apply to a case like this where the defense is founded upon a limited stipulation of the policy.

No consideration is presented in the briefs which raises any doubt respecting the right of the company to rely upon this stipulation of the policy, but while the particular questions of fact which counsel for the company propounded upon the trial to be answered by the jury were pertinent in view of the stipulation of the policy and the evidence relating to the cause of the death of the assured, the record shows that counsel made a request which was not authorized by the statute. It appears from the record that the request was that the court should "instruct the jury to return a special verdict, answering the questions" propounded. The provision of the statute by which this is supposed to have been authorized is found in Section 5201, Revised Statutes: "In all cases, when requested by either party, the court shall instruct the jurors, if they render a general verdict, to find specially upon particular questions of fact, to be stated in writing, and shall direct a written finding thereon." Very plainly the statute contemplates that the answers to such questions of fact shall be returned with a general verdict, and it does not authorize the request made in this case

that the court direct the jury to return a special verdict answering the questions submitted. The purpose in view in requiring the finding on such particular questions of fact is to test the correctness of the general verdict. *The Cleveland & Elyria Electric R. R. Co.* v. *Hawkins,* 64 Ohio St., 391; *Gale* v. *Priddy,* 66 Ohio St., 400.

But the refusal of the court to give to the jury, for their guidance in determining upon the general verdict, the requested instruction set out in the statement of the case must have been prompted by the view that the stipulation under consideration, limiting the liability of the company to a death resulting from accident alone, is invalid. For that conclusion there is no basis either in reason or in the decided cases. The instructions requested was pertinent in view of the stipulations of the policy, the issues of fact made by the pleadings, and the evidence offered by the plaintiff below. By it the jury would have been directed to inquire whether the conditions set out in the policy as excluding the liability of the company actually existed, and to return a verdict in its favor, if upon the evidence it should be found that those conditions existed.

The judgment of the circuit court and the court of common pleas are reversed.

*Reversed.*